**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

DAMIAN DEL TORO GAINZA,            )
                                  )
            Petitioner,            )
                                  )
v.                                 )        Case No. CIV-26-722-D
                                  )
TODD BLANCHE, et al.,              )
                                  )
            Respondents.           )

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner Damian Del Toro Gainza, a noncitizen[1] and Cuban national proceeding

pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Docs. 1, 2, challenging under

28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE").

United States District Judge Timothy D. DeGiusti referred this matter to the undersigned

Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).  The undersigned set

an expedited briefing schedule, Doc. 6, and the Petition is at issue.  For the reasons set forth

below, the undersigned recommends that the Court grant the Petition in part and order

Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within

five business days or otherwise to release him if there is no hearing within that time.

I.      <u>**Background**</u>

Petitioner, a citizen of Cuba, applied for admission to the United States at the

Hildago, Texas Port of Entry in October 2023.  Resp. at 2; Doc. 8-1 at 1 (Notice to Appear).

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

On October 7, 2023, ICE placed Petitioner into removal proceedings before the Immigration Court through a Notice to Appear, and charged him with being an immigrant not in possession of valid documents at the time of application for admission under 8 U.S.C. § 1182(a)(7)(A)(i).  Resp. at 2; Doc. 8-1 at 1, 4.  At some point later, Petitioner was released from detention on parole, which was valid for two years.  Pet. at 3; Resp. at 2.  He alleges he complied with all parole requirements since his release from custody.  Pet. at 3.

On December 20, 2025, Petitioner filed an Application to Register Permanent Residence or Adjust Status, seeking to adjust his status under the Cuban Adjustment Act.  Resp. at 2; Doc. 8-2.  On January 5, 2026, he filed an Application for Asylum and for Withholding of Removal.  Resp. at 2; Doc. 8-3.  On January 28, 2026, an IJ granted Petitioner's motion to terminate his immigration proceedings because of his "pending application for adjustment of status" under the Cuban Adjustment Act.  Resp. at 3; Doc. 8-5 at 1.  The government appealed the IJ's decision.  Resp. at 3.  That appeal is pending, and Petitioner's immigration proceedings are ongoing.  *Id*. at 2-3.

On September 27, 2025, ICE re-detained Petitioner after a traffic stop.  Pet. at 1, 3.  Respondents contend Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1), meaning that he is subject to mandatory detention.  Resp. at 5.  Petitioner does not allege whether he requested a bond hearing.  Such a request, though, would likely be futile because all immigration judges ("IJs") are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

2

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. *Id*. at 2. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited June 10, 2026).

## II.    Petitioner's Claims

Petitioner asserts two counts in his Petition.

- **Count I: Prolonged Civil Detention Violates Due Process.** Petitioner alleges his continued detention violates the Due Process Clause because it does not reasonably relate to a legitimate government purpose and is not supported by a constitutionally adequate individualized determination. Pet. at 4.[2]

- **Count II: Continued Detention is Not Reasonably Related to Ensuring Appearance or Protecting the Community**. Petitioner alleges his continued detention, where the government cannot demonstrate his detention is necessary to ensure appearance or protect this community, violates his due process rights. *Id*.

He asks the Court to "order his immediate release from ICE custody" or, alternatively, "order Respondents to provide [him] with a prompt bond hearing before an immigration judge, at which the government must prove by clear and convincing evidence that continued detention is necessary." *Id*.

---

[2] Petitioner alleges his detention is prolonged "following an inadequate bond hearing." Pet. at 4. However, Petitioner does not provide additional information about any previous bond hearing or allege the outcome of any such hearing. Respondents also do not provide any additional information about a previous bond hearing. Accordingly, without sufficient evidence in the record to demonstrate Petitioner did, in fact, already receive a bond hearing, the undersigned assumes that he did not receive a bond hearing or the IJ did not make a substantive determination as to whether Petitioner is entitled to bond.

### III.   Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.   Analysis

#### A.   Section 1226(a) applies to Petitioner's detention.

Petitioner does not raise a claim that his detention violates the Immigration and Nationality Act ("INA").  However, given Respondents' factually unsupported argument to apply § 1225(b)(1), ICE's current policies to detain similar petitioners under § 1225(b)(2)(A), and Petitioner's argument that § 1226(a) governs his detention, the Court must first determine what statute governs Petitioner's detention before it can determine whether his due process rights have been violated.

The two sections of the INA at issue are 8 U.S.C. §§ 1225 and 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  *Id.* § 1225(a)(1) (citation modified).  Section 1225(b)(1) "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled."  *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D.N.M. 2014) (citing § 1225(b)(1)).

> Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior

> two years are subject to expedited removal without further hearing or review, unless the alien indicates an intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer.

*Id.* (citing § 1225(b)(1)(A)(i)-(iii)). Section 1225(b)(1)(B)(ii) further requires that, if an asylum officer determines that a noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum.

Fundamentally, under § 1225(b)(1), a noncitizen who arrives at a port of entry and applies for admission is ordered removed "without further hearing or review" unless the noncitizen "indicates either an intention to apply for asylum" or expresses a fear of persecution. If Petitioner is subject to this "expedited removal" under § 1225(b)(1), he is not entitled to a bond hearing. But noncitizens detained under § 1225(b)(1)(B)(ii) can be paroled under 8 U.S.C. § 1182(d)(5)(A). On the other hand, Section 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Respondents contend Petitioner is an arriving alien and properly detained under § 1225(b)(1) because he was classified as an arriving alien in October 2023 and "retains his 'arriving status' in the present case." Resp. at 5-6. However, Petitioner was recently apprehended in the interior of the country and has been living in the United States for more than two years since his release in October 2023. The undersigned finds it implausible under these circumstances that Petitioner remains an "arriving alien." Under § 1225(b)(1)

"someone arriving in the United States is someone who has reached the border or a port of entry." *Rafibaev v. Noem*, No. 26-CV-00461, 2026 WL 607559, at *3 (D. Colo. Mar. 4, 2026) (citation modified). Thus, "upon his parole into the interior of the country, petitioner had arrived in the United States and was no longer a noncitizen *arriving* in the United States." *Id.* (emphasis added) (citation modified); *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) (finding petitioner, arrested in New York in 2025, "can no longer be classified as a noncitizen 'who is arriving in the United States' even though she was initially detained as such in Texas in September 2021").

As such, Petitioner's current detention is not governed by § 1225(b)(1). The undersigned instead concludes § 1226(a) governs Petitioner's detention. *See Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2 (W.D. Okla. Apr. 7, 2026) (rejecting a similar argument and finding "Petitioner's detention does not arise from any ongoing entry or inspection process, but from ICE's decision to place him in removal proceedings" and "in that posture, detention is properly understood as detention pending a decision on whether the alien is to be removed, which falls within Section 1226(a), notwithstanding Petitioner's initial classification at the time of entry." (citation modified)).

This recommendation is also consistent with decisions of this Court and other Judges of this District holding that when the provisions in § 1225 do not apply, the more general provisions of § 1226 govern a petitioner's detention. *See, e.g., Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *5 (W.D. Okla. Dec. 16, 2025) (finding § 1225(b)(2)(A) inapplicable to petitioner's detention and applying § 1226(a)); *see also Lopez v. Corecivic Cimmaron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *3-7 (W.D. Okla.

Jan. 21, 2026) (same); *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026) (same); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025) (same); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *4 (W.D. Okla. Dec. 8, 2025) (same).

In addition, this conclusion is consistent with other courts in the Tenth Circuit analyzing this question. *See Khubiev v. Baltasar*, No. 25-CV-03955, 2026 WL 864237, at *5 (D. Colo. Mar. 30, 2026) (agreeing with petitioner that his detention is governed by § 1226(a) "because it arises from removal proceedings initiated years after his release [on parole] into the United States"); *Rafibaev*, 2026 WL 607559, at *5 (finding § 1226 rather than § 1225(b)(1) governed detention of petitioner who had previously entered the United States through a port of entry and was subsequently paroled); *Murzi v. Noem*, No. 26-CV-00359, 2026 WL 395111, at *1 (D. Colo. Feb. 12, 2026) (acknowledging rulings by several courts that "paroled petitioners who go on to live in the United States have been released on their own recognizance, and therefore that § 1226, rather than § 1225 applies").

Many district courts outside the Tenth Circuit have similarly ruled. *See, e.g.*, *Suarez-Lugo v. Bondi*, No. 26-CV-00029, 2026 WL 332317, at *9 (S.D. Tex. Feb. 6, 2026) (finding petitioner, "as someone who was previously paroled from custody and continuously resided in the United States while on parole for over two years, is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1)"); *Ahmadi v. Becerra,* No. 25-cv-01044, 2026 WL 309561, at *10 (E.D. Cal. Feb. 5, 2026) ("8 U.S.C. § 1226(a) attaches as the governing legal scheme. Because Petitioner was released on his own recognizance after his initial detention at the border, he is also ineligible for expedited removal proceedings

7

as he has been 'paroled' within the meaning of section 1225(b)(1)." (citation modified));

*Aviles-Mena v. Kaiser*, No. 25-cv-06783, 2025 WL 2578215, at \*4 (N.D. Cal. Sep. 5, 2025)

(finding "section 1225(b)(1) does not authorize designation for expedited removal of any

noncitizen who has, at any point in time, been paroled into the United States" because

"under the plain meaning of section 1225(b)(1), [petitioner] no longer qualifies for

expedited removal because he was paroled into the United States and has been living and

working in the United States for three years" (citation modified)).

Accordingly, the undersigned recommends the Court apply § 1226(a) to govern

Petitioner's current detention.

### B.    Due Process entitles Petitioner to a bond hearing.

Petitioner alleges his continued detention where the government cannot demonstrate

his detention is necessary to ensure appearance or protect this community violates his due

process rights.  Pet. at 4.  The undersigned concludes that because § 1226(a) applies to

Petitioner's detention, he is owed the due process provided to him under the statute.  When

"§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided

for in § 1226—namely, an individualized bond hearing before an IJ."  *Velasquez Salazar*

*v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).

The Fifth Amendment's Due Process Clause protects all persons within the United

States from being "deprived of life, liberty, or property, without due process of law."  U.S.

Const. Amend. V.  It applies to noncitizens within the United States "whether their

presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.

In the civil immigration detention context, courts consistently apply the balancing test set

8

out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a

noncitizen.   *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021)

(applying *Mathews* to due process challenges to prolonged detention under § 1226(a));

*Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).[3]

The *Mathews* test includes three factors: (1) "the private interest that will be affected

by the official action"; (2) "the risk of an erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards"; and (3) "the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement

would entail." *Mathews*, 424 U.S. at 335.  All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention.

This is "the most significant liberty interest there is—the interest in being free from

imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507,

529 (2004)).  Because freedom from restraint is "at the core of the liberty interest protected

by the Due Process Clause, commitment for any purpose constitutes a significant

deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S.

71, 80 (1992) (citation modified).  "Congress may make rules as to aliens that would be

unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that

---

[3] While Petitioner does not rely on the *Mathews* test in alleging the violation of his due process, the undersigned concludes that is the proper test to apply in the civil immigration detention context.  *See Alvarado Montoya*, 2025 WL 3733302, at *12-15 (applying the *Mathews* framework).

power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention. *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, considering Respondents' current position to afford him no bond hearing. *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest.").

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous deprivation.

10

*See Montero Cordova*, 2026 WL 867689, at *10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)). Further, the fact Petitioner has been living in the United States for more than two years also weighs in his favor. *See Ekenge v. Baltazar*, No. 26-CV-00630, 2026 WL 617341, at *5 (D. Colo. Mar. 5, 2026) (finding the government's interest "not substantial" where petitioner was re-detained after being released and "any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at *6 (W.D. Tex. Mar. 6, 2026). Petitioner's continued detention without a bond hearing violates his due process liberty interests, and he is entitled to a prompt bond hearing under § 1226(a) before an IJ.

### C.    The proper remedy is a bond hearing.

Petitioner seeks "immediate release from ICE custody" or, alternatively, asks that the Court "order Respondents to provide Petitioner with a prompt bond hearing before an immigration judge." Pet. at 4 (citation modified). Consistent with a common approach in

this District, the undersigned recommends Petitioner be afforded a constitutionally sufficient bond hearing as a lesser remedy than release. *See Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at \*1 (W.D. Okla. Apr. 8, 2026) ("As a remedy, Petitioner requests his immediate release, but the Court concludes that a bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).[4] As Judge Russell in this District acknowledged, "Petitioner is entitled to the custody procedures provided by [§ 1226(a)]," and "the statute provides the Department of Homeland Security the discretion to either detain a noncitizen or release the noncitizen on bond." *Id.* at \*1 (citation modified).

As such, "an individualized custody redetermination hearing would provide Petitioner with the process he is due under the statute." *Id.* (citation modified). Further, Petitioner has not alleged or provided evidence that he was previously detained and released under any other provision.[5] Therefore, based on Petitioner's arguments and

---

[4] Though Petitioner alleges he may have already received an "inadequate bond hearing," Pet. at 4, neither party provides the Court any information about a previous bond hearing. Accordingly, the Court should order a bond hearing to which Petitioner is entitled under § 1226(a) to ensure his rights are not violated.

[5] In some cases, Judges in this District have ordered release for noncitizens whose earlier release was improperly revoked in the absence of changed circumstances or proper procedures. *See, e.g., Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1483557, at \*1 (W.D. Okla. May 27, 2026) (ordering release where ICE improperly revoked petitioner's prior bond ordered by an immigration judge); *Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1207088, at \*2 (W.D. Okla. May 4, 2026) (ordering release where ICE improperly revoked petitioner's prior humanitarian parole); *Skutar v. Mullin*, CIV-26-0036-HE, Doc. 15, at 2-3 (W.D. Okla. Apr. 24, 2026) (ordering petitioner's immediate release and stating "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), if an immigration judge has determined the noncitizen should be released, the DHS may

consistent with Judge Russell's approach, the undersigned recommends Petitioner be afforded an individualized bond hearing pursuant to § 1226(a).

Finally, Magistrate Judges in this District, including the undersigned, have previously recommended the Court order the government to bear the burden at a bond hearing to establish a petitioner's risk of flight or danger when granting habeas relief to similarly situated petitioners when (1) their re-detention violates due process and (2) they raise such a claim and specifically request burden shifting. However, Judges in this District, including this Court, have declined to order burden shifting. *See Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla. June 5, 2026) (declining "to place the burden on the government to justify Petitioner's detention pending removal proceedings"); *see also, e.g., Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (denying petitioner's request for burden shifting, and holding "although petitioner is entitled to a bond hearing under § 1226(a), the Court declines to specify or alter the burden of proof at this stage") (citation modified); *Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *1-2 (W.D. Okla. Apr. 16, 2026) (declining to reach petitioner's due process claims and concluding burden shifting to the

---

not re-arrest that noncitizen absent a change of circumstance") (citation modified). However, Petitioner has not alleged or provided evidence that the circumstances of his re-detention entitle him to release rather than a bond hearing. *See Singh v. Mullin*, No. CIV-26-471-SLP, 2026 WL 1255801, at *2 (W.D. Okla. May 7, 2026) (finding petitioner is entitled to a bond hearing but not release because he "has not provided the Court with evidence of his prior Order of Release or its terms, nor has Petitioner supported his requested form of relief with legal authority"). Accordingly, the undersigned concludes Petitioner is entitled only to a bond hearing and not release.

government in a § 1226(a) bond hearing is premature and not ripe for adjudication before a bond hearing has been conducted).  Accordingly, the undersigned does not recommend burden shifting in this case.

## V.        Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objection must be filed not later than **June 17, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **June 23, 2026**.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 10th day of June, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

14